**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ANDERSON/GREENWOOD DIVISION**

| | |
|---|---|
| Timothy Hall,<br><br>Plaintiff,<br><br>v.<br><br>B. Shubbs; A. Davis; J. Templeton; M. Burgess; and United States of America,<br><br>Defendants. | **C/A No. 8:26-cv-00185-JD-WSB**<br><br><br>**ORDER AND OPINION** |

This matter is before the Court on the Report and Recommendation ("Report") of United States Magistrate Judge William S. Brown (DE 8), issued pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.). The Report recommends denying Plaintiff Timothy Hall's ("Plaintiff") motion to proceed *in forma pauperis* ("IFP Motion") (DE 2) and dismissing his Complaint (DE 1) without service of process or leave to amend. Plaintiff filed objections (DE 11), a further handwritten submission (DE 12), and additional objections (DE 15).

Having reviewed the specifically challenged portions of the Report de novo, the Court agrees that the pleaded constitutional damages claims must be dismissed. However, the Court modifies the Report's reasoning in light of intervening Fourth Circuit authority and declines to adopt its separate recommendation to dismiss for failure to exhaust administrative remedies. The Court also addresses Plaintiff's objection concerning his IFP eligibility and his request for leave to amend.

Accordingly, the Court **ADOPTS IN PART, MODIFIES IN PART, AND DECLINES TO ADOPT IN PART** the Report.

## A. Background

Plaintiff, proceeding pro se, is a sentenced federal prisoner at FCI Bennettsville. He sued several Bureau of Prisons ("BOP") employees and named the United States, alleging unconstitutional medical treatment following an episode of unresponsiveness. (DE 1 at 1–5; DE 1-1 at 1–7.) His Complaint invokes the Eighth Amendment and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (DE 1 at 4; DE 1-1 at 1, 5–6.)

Plaintiff alleges that he has epilepsy and suffered a seizure at the prison law library on October 1, 2025. He contends that officers mistakenly treated the episode as an opioid overdose, moved him to the lieutenant's office, and administered two nasal doses and an additional intramuscular dose of Narcan. He alleges that the medication worsened his seizure and that officers failed to obtain timely medical attention. (DE 1-1 at 2–5.) In DE 11 and DE 15, Plaintiff describes the same incident as occurring October 6, 2025. (DE 11 at 1; DE 15 at 1.) The Court notes the discrepancy but need not resolve it at screening.

Plaintiff also alleges that a hospital toxicology test was negative for drugs and that he experienced headaches, nosebleeds, back pain, emotional distress, and other symptoms afterward. He also alleges that the officers should have known of his seizure disorder through his medical records. (DE 1-1 at 4–5, 9.) These are Plaintiff's allegations, not judicial findings that Narcan caused the reported symptoms or that any particular officer actually knew his medical history.

Plaintiff attached incident reports and witness declarations concerning the events. Burgess's incident report describes a medical emergency call, two doses of

nasal Narcan administered by responding staff, transport to health services, an intramuscular dose while emergency medical services were awaited, and subsequent outside-hospital transport. Templeton's report principally describes attempted testing after Plaintiff returned from the hospital. (DE 1-1 at 14.) Plaintiff also supplied witness declarations concerning his unresponsiveness and the officers' actions. (DE 1-1 at 8–12.)

The Court considers these materials as part of the pleadings but does not adopt the officers' accounts over Plaintiff's contrary allegations, resolve their evidentiary weight, or make credibility findings. In particular, the incident reports do not establish at screening that the treatment provided was timely, appropriate, or medically indicated.

The Magistrate Judge recommended denying the IFP Motion based on Plaintiff's inmate account records. The Report separately concluded that the Complaint failed to state a cognizable *Bivens* claim and that Plaintiff had not exhausted administrative remedies. (DE 8 at 7–16.)

DE 11 and DE 15 make substantially the same four objections: Plaintiff (1) alleges a serious seizure disorder and conduct amounting to deliberate indifference, (2) states a plausible claim within *Carlson v. Green*, 446 U.S. 14 (1980), (3) exhausted available administrative remedies or was prevented from doing so, and (4) should receive leave to amend if the pleading is deficient. (DE 11 at 1–2; DE 15 at 1–2.) They assert that officers "knew or should have known" of Plaintiff's epilepsy and that Narcan worsened his condition. (DE 11 at 1; DE 15 at 1.) The Court does not construe

that alternative phrasing as an unequivocal allegation that every named Defendant possessed actual knowledge.

DE 12 adds an objection concerning IFP eligibility, explaining that some deposits were attributable to a prior stimulus payment and family assistance, and that Plaintiff's current prison-job income is modest. (DE 12 at 1–2.) It also contests the medical-care finding and asserts that BP-8 and BP-9 submissions went unanswered and that efforts to move through the grievance process were frustrated. (DE 12 at 2–4.)

The Court considers each distinct ground rather than treating the objections as a general disagreement with the Report.

## B. Legal Standard

### 1. Review of the Report and Recommendation

The Magistrate Judge makes recommendations; the district judge retains responsibility for the final decision. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court must determine de novo any portion of a report to which a party makes a proper, specific objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The Court may accept, reject, modify, or recommit the recommendation. 28 U.S.C. § 636(b)(1). Absent a specific objection, the Court ordinarily reviews the unchallenged recommendation for clear error. *Diamond v. Colonial Life & Accident Insurance Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

Pro se objections are construed liberally. *Elijah v. Dunbar*, 66 F.4th 454, 460–61 (4th Cir. 2023), explains that objections "need not be novel to be sufficiently specific"; a repetition of a previously presented claim can identify a ground for de novo

review. Here, DE 11 and DE 15 identify particular objections, while DE 12 separately challenges the fee finding and elaborates on exhaustion. (DE 11 at 1–2; DE 12 at 1–4; DE 15 at 1–2.)

The Court has accordingly reviewed de novo the determinations concerning indigency, the Eighth Amendment and *Bivens*, administrative exhaustion, and amendment. The additional factual allegations in the objections are considered for what they show about the asserted grounds of disagreement; the Court does not treat the objections as an amended operative complaint.

**2. Screening and Pleading Requirements**

Section 1915A requires screening of a prisoner's civil action against governmental defendants and dismissal of claims that are frivolous, fail to state a claim, or seek damages from immune defendants. 28 U.S.C. § 1915A(a)–(b). Screening is required whether or not IFP status is granted. A pro se complaint is liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Nevertheless, the Complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Court accepts well-pleaded facts as true and draws reasonable inferences in Plaintiff's favor, but need not accept legal conclusions or resolve disputed facts against him. *Iqbal*, 556 U.S. at 678–79.

**3. Deliberate Indifference to Serious Medical Needs**

The Eighth Amendment prohibits deliberate indifference to a convicted prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976). A

claim requires both an objectively serious medical need and a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994).

The subjective requirement is actual knowledge and disregard of a substantial risk of serious harm. *Id.* at 837. However, actual knowledge may be established by circumstantial evidence. A factfinder may infer that an official appreciated a substantial risk when the risk was sufficiently obvious. *Id.* at 842; *Makdessi v. Fields*, 789 F.3d 126, 133–34 (4th Cir. 2015).

The Fourth Circuit recently reaffirmed that actual knowledge may be shown through direct evidence or circumstantial evidence that an official appreciated an obvious risk. *Edwards v. Witherspoon*, No. 24-7049, 2026 WL 2661096, at *8–9, *15 (4th Cir. Sept. 10, 2026). Nevertheless, the subjective component remains distinct from negligence and requires more than proof that an official should have recognized a danger. *Farmer*, 511 U.S. at 837–38; *Jackson v. Bush*, 181 F.4th 407, 413–16 (4th Cir. 2026).

An allegedly mistaken diagnosis or unsuccessful course of treatment, without more, does not establish deliberate indifference. *Estelle*, 429 U.S. at 105–06. Conversely, the provision of some medical assistance does not automatically foreclose a deliberate-indifference claim if officials knowingly disregard an excessive risk. *See Scinto v. Stansberry*, 841 F.3d 219, 225–26 (4th Cir. 2016); *Edwards*, 2026 WL 2661096, at *15–16.

**4. Availability of a *Bivens* Remedy**

The Supreme Court has recognized an implied damages action against federal officers in only three settings: a Fourth Amendment search-and-seizure claim,

*Bivens*, 403 U.S. at 397; a Fifth Amendment sex-discrimination claim, *Davis v. Passman*, 442 U.S. 228, 248–49 (1979); and an Eighth Amendment deliberate-indifference claim involving a federal prisoner's medical care, *Carlson*, 446 U.S. at 16–24.

The Supreme Court has instructed lower courts not to extend those implied remedies lightly. *See Ziglar v. Abbasi*, 582 U.S. 120, 135–40 (2017); *Egbert v. Boule*, 596 U.S. 482, 491–93 (2022); *Goldey v. Fields*, 606 U.S. 942, 943–45 (2025) (per curiam).

The Court first asks whether the pleaded claim differs meaningfully from the recognized *Bivens* contexts. If so, a remedy cannot be implied where any special factor counsels hesitation, including Congress's capacity to address the subject or an alternative remedial structure. *See Egbert*, 596 U.S. at 492–98.

In *Spivey v. Breckon*, 173 F.4th 174, 179–81 (4th Cir. 2026), decided after the Report, the Fourth Circuit rejected the proposition that every claim concerning inadequate medical care automatically fits within *Carlson*. It required a comparison of the actual conduct and circumstances, rather than merely the constitutional amendment asserted. The Court found the claims before it materially different in kind, severity, and results. *See id.* at 179–80.

*Spivey* does not eliminate *Carlson* as a recognized context. The Court must compare Plaintiff's particular allegations with *Carlson* and, only if a new context is presented, consider special factors. *See id.* at 179–81; *Bulger v. Hurwitz*, 62 F.4th 127, 137–41 (4th Cir. 2023).

## C. Discussion

### 1. Plaintiff's IFP Motion

Plaintiff objects to the recommendation that his resources are sufficient to prepay the filing fee. (DE 12 at 1–2.) The Report recites that the January 6, 2026, certified account balance was $1,361.71 and the average monthly balance for the preceding six months was $1,423.79; the trust-account statement reportedly showed a balance of at least $1,361.71 throughout 2025. (DE 8 at 7–9 (citing DE 2-1, 2-2).) Those balances materially exceed the $405 fee payable upon ordinary filing identified in the Report. *Id.* at 9.

Plaintiff explains that a significant earlier deposit came from a stimulus payment around 2020, that family members occasionally sent small amounts, that he has no outside bank account, and that prison work pays little. He asks the Court to consider the expenses of incarceration. (DE 12 at 1–2.) His filing does not supply a revised certified account statement or quantify expenses sufficient to show that prepayment would leave him unable to obtain necessities.

An IFP applicant need not be "absolutely destitute." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339–40 (1948). If leave is granted to an incarcerated plaintiff, the fee is generally collected through the statutory installment procedure; IFP status does not eliminate the prisoner's obligation. 28 U.S.C. § 1915(b)(1)–(2).

Determining IFP eligibility requires a case-specific evaluation of financial resources. *See Dillard v. Liberty Loan Corp.*, 626 F.2d 363, 364 (4th Cir. 1980).

The Court has considered the source of Plaintiff's deposits and his limited present earning capacity. Nevertheless, on the financial record identified in DE 8 at

7–9, and without showing that prepayment would deprive him of necessities, Plaintiff has not established an inability to prepay the required filing fee. The Court, therefore, adopts the Report's recommendation to deny the IFP Motion (DE 2). Because the Complaint is also subject to independent screening under § 1915A, this decision does not itself supply the ground for dismissing the action.

The Court does not determine that Plaintiff knowingly misstated his resources or that his allegation of poverty was untrue within the meaning of § 1915(e)(2)(A). The discrepancy between the reported zero-dollar balance and the certified financial records need not be resolved under that separate statutory provision to decide eligibility. (DE 8 at 7–9.) The objection to the recommended denial of IFP status is **OVERRULED**. (DE 12 at 1–2.)

**2. Plaintiff's Eighth Amendment Medical-Care Allegations**

Plaintiff's first two objections assert that epilepsy is a serious medical need and that the officers' allegedly mistaken overdose response, including Narcan administration, demonstrates more than negligence. He alleges that officers "knew or should have known" of his condition and specifically contends that Narcan worsened the episode. (DE 11 at 1–2; DE 15 at 1–2; see also DE 12 at 2.) The Court assumes for screening purposes that Plaintiff's epilepsy and seizure episode present an objectively serious medical need. The main issue is whether the alleged conduct and knowledge of each Defendant plausibly demonstrate deliberate indifference, rather than mistake or negligence.

Under *Farmer*, actual knowledge of a substantial risk may be inferred from circumstances demonstrating that the risk was obvious. 511 U.S. at 842. In *Edwards*,

the Fourth Circuit reiterated that actual knowledge may be shown by circumstantial evidence, including evidence that an official appreciated a risk apparent from the circumstances. 2026 WL 2661096, at *8–9, *15.

Accordingly, the Court does not require Plaintiff to allege that each Defendant personally reviewed his medical records or received an express warning concerning his epilepsy. Nor does the Court presume that officers lacked knowledge merely because Plaintiff was unable to identify the information available to them.

That said, the subjective requirement demands more than a showing that an official should have recognized a danger. *See Farmer*, 511 U.S. at 837–38; *see also Jackson*, 181 F.4th at 413–16. A plaintiff must allege facts supporting the reasonable inference that the particular official actually appreciated a substantial risk and disregarded it.

The Court has considered Plaintiff's allegations that the officers observed his unresponsiveness, should have recognized his seizure, assumed drug use without an adequate medical assessment, administered Narcan, and failed to provide appropriate care. (DE 1-1 at 2–5; DE 11 at 1; DE 15 at 1.) Those allegations describe a potentially serious error in responding to a medical emergency.

However, the Complaint does not sufficiently identify facts showing that each Defendant actually recognized that Plaintiff was experiencing an epileptic seizure, appreciated that the medication or the response presented a substantial risk of serious harm under the circumstances, and consciously disregarded that risk.

The distinction is not whether the officers made a correct medical assessment. Rather, it is whether the facts plausibly establish knowing disregard of a recognized danger, as opposed to an allegedly mistaken assessment of Plaintiff's condition.

In *Jackson*, the Fourth Circuit emphasized the distinction between conduct that hindsight may show was mistaken and conduct undertaken with actual appreciation of a substantial risk. 181 F.4th at 413–17. Although *Jackson* arose on summary judgment and involved different factual circumstances, its discussion of the subjective component is instructive. The Court does not apply that decision to resolve disputed evidence against Plaintiff at screening.

The Court likewise does not rely on the mere fact that some medical assistance was provided as dispositive. Plaintiff expressly alleges that treatment was delayed and that Narcan worsened his condition. (DE 1-1 at 2–5; DE 11 at 1; DE 15 at 1.) Those allegations are accepted for purposes of the present review.

Burgess's attached report provides a different account, describing the initiation of a medical-emergency response, transfer to health services, and outside-hospital treatment. (DE 1-1 at 14.) The Court does not credit that account over Plaintiff's allegations or find that the response was timely or medically appropriate. Instead, the report is considered only as part of the materials Plaintiff submitted concerning the sequence of events.

The ultimate pleading deficiency is the absence of sufficiently particularized factual allegations demonstrating that each Defendant subjectively recognized and disregarded a substantial medical risk. The Court does not require proof at this stage, but the alleged facts must support more than the possibility of negligence or an

incorrect emergency-treatment decision. *See Iqbal*, 556 U.S. at 678–79; *Estelle*, 429 U.S. at 105–06.

Individual liability also requires consideration of each officer's own conduct. Plaintiff attributes an injection to Davis; Burgess's report describes staff administering medication without identifying each administrator; and Templeton's report principally concerns post-hospital testing. (DE 1-1 at 3–6, 14.) Although these allegations identify some individual conduct, they do not adequately establish the requisite subjective culpability for each Defendant.

The allegations concerning Shubbs rely principally on his supervisory position and general responsibility for inmate safety. The Complaint does not sufficiently identify Shubbs's personal participation in the challenged emergency response, his direction of the allegedly unconstitutional conduct, or other individual actions plausibly establishing constitutional liability.

Under *Iqbal*, personal-capacity liability under *Bivens* must rest on a defendant's own unconstitutional conduct rather than respondeat superior. 556 U.S. at 676–77.

The Court recognizes that, under the supervisory-liability framework applicable to certain § 1983 claims, awareness of a pervasive risk may be relevant even without knowledge of a particular plaintiff's circumstances. *See Carter v. Cabell*, 185 F.4th 467, 479–81 (4th Cir. 2026). The Court does not impose a categorical requirement that a supervisor possess advance knowledge of the particular inmate's medical condition. Instead, the deficiency concerns the lack of adequately pleaded

personal involvement under the federal-officer damages cause of action Plaintiff asserts.

The Court ,therefore, concludes that the existing Complaint fails adequately to allege the subjective element of deliberate indifference against the named officers. This conclusion does not resolve whether the medication was medically indicated, whether Plaintiff suffered the alleged symptoms, or whether the officers' accounts are accurate.

Even assuming Plaintiff could sufficiently plead an underlying constitutional violation, the Court must separately determine whether an implied damages remedy is available under *Bivens*.

**3. Availability of a *Bivens* Remedy Under *Spivey***

Plaintiff expressly argues that his claim falls within *Carlson*'s recognized context of medical deliberate indifference. (DE 11 at 2; DE 15 at 2.) The Court has considered that objection, the intervening decision in *Spivey*, and the specific facts alleged in the original pleading.

The comparison requires recognition of an important similarity. As *Spivey* recounts, *Carlson* included allegations that prison officials administered medication contraindicated for the inmate's asthma, worsening his attack, as well as rejected medical advice and delayed necessary care. *See Spivey*, 173 F.4th at 179–80 (discussing *Carlson*, 446 U.S. at 16 n.1).

Hall likewise alleges that correctional personnel administered medication that worsened an episode of serious illness. The Court does not disregard that similarity

or conclude that *Carlson* is categorically limited to fatal injuries. The pleaded circumstances nevertheless differ in material respects.

*Carlson* alleged that officials deliberately continued contraindicated treatment despite medical directions, permitted a prolonged episode of inadequate care, used defective medical equipment, and delayed hospital transfer, ultimately causing death. *See Carlson*, 446 U.S. at 16 n.1; *see also Spivey*, 173 F.4th at 179–80.

Here, the alleged wrong concerns a single, acute response by correctional personnel to an unresponsive prisoner. Plaintiff alleges that the officers incorrectly attributed his condition to opioid use and administered Narcan when he was experiencing a seizure. He does not identify a contrary physician's instruction known to those officers, a decision to withhold care after recognizing a seizure, or a prolonged refusal to seek medical assistance.

The materials attached to the Complaint also describe emergency assistance, involvement by health services, and hospital transport. (DE 1-1 at 2–5, 14.) The Court does not rely on those materials to resolve disputed questions of timeliness, adequacy, or medical causation. Instead, their description of the episode provides context for the alleged conduct.

The Court recognizes that the wrong asserted is discrete conduct during a medical episode, which in that respect is closer to *Carlson* than the broader institutional medical-treatment complaints addressed in *Spivey*. It is not enough simply to say that some care was provided or that Plaintiff survived.

The more significant distinctions concern the nature of the challenged conduct, the roles of the participating officials, and the particular medical circumstances. The

existing pleading describes an allegedly mistaken emergency assessment and administration of medication by nonmedical correctional personnel, rather than the knowing rejection of identified medical instructions or prolonged withholding of recognized necessary treatment alleged in *Carlson*.

These differences in conduct, actors, and circumstances are meaningful under *Spivey*'s fact-specific new-context inquiry. 173 F.4th at 179–80. Although the alleged resulting harm is also relevant, the Court does not treat the difference in ultimate outcome as independently dispositive. The Court, therefore, concludes that Plaintiff's claim presents a new *Bivens* context.

The Court next considers whether special factors counsel hesitation before recognizing an additional implied damages remedy. Recognizing a personal-capacity damages action for the challenged conduct would require the Court to extend *Bivens* into correctional officers' acute emergency medical-response decisions. Such claims may implicate the BOP's allocation of responsibilities between correctional and medical personnel, the circumstances under which nonmedical officers may administer emergency medication, training and operational protocols, and the institutional procedures governing urgent medical responses.

These considerations do not make correctional officers immune from constitutional constraints or necessarily justify alleged emergency-treatment misconduct. Rather, they turn on whether the Judiciary should recognize an additional implied damages remedy in areas involving institutional medical-response responsibilities and administrative judgments.

Congress has extensively regulated federal prisoner litigation without creating a generally applicable personal-capacity damages remedy for federal prison officials. The BOP also maintains an administrative remedial structure, and Congress has provided statutory remedies addressing certain claims against the United States. *See Spivey*, 173 F.4th at 180–81; *Bulger*, 62 F.4th at 139–42; *Egbert*, 596 U.S. at 492–98.

The Supreme Court has instructed that an alternative remedial structure may counsel hesitation even when it does not provide the same relief a plaintiff seeks through *Bivens*. *Egbert*, 596 U.S. at 492–98.

Plaintiff maintains that the prison grievance process was unresponsive or obstructed. (DE 11 at 2; DE 12 at 3–4; DE 15 at 2.) That allegation bears on administrative exhaustion, addressed below. However, the potential unavailability of an administrative remedy to a particular litigant does not necessarily authorize recognition of a new *Bivens* action. *See Spivey*, 173 F.4th at 180–81; *Bulger*, 62 F.4th at 140–41.

Taken together, the nature of the proposed extension, the institutional responsibilities implicated, Congress's statutory choices, and the existence of alternative remedial structures counsel against recognition of an additional implied damages remedy. Accordingly, the Court concludes that the particular constitutional damages claims asserted here arise in a new *Bivens* context and that special factors counsel against implying a remedy. This is an independent ground for dismissal, apart from the insufficiency of the pleaded subjective component of deliberate indifference.

A *Bivens* damages claim also does not lie against the United States or against federal officers in their official capacities. *See FDIC v. Meyer*, 510 U.S. 471, 484–86 (1994). Plaintiff's objections concerning the Eighth Amendment pleading and the availability of a *Bivens* remedy are **OVERRULED**. (DE 11 at 1–2; DE 12 at 2; DE 15 at 1–2.) The Court adopts the Report's recommended dismissal of the constitutional damages claims, but on the supplemented and clarified grounds stated above.

**4. Administrative Exhaustion**

Plaintiff's third objection argues that administrative remedies were exhausted or rendered unavailable through inaction and obstruction. DE 12 alleges that BP-8 and BP-9 requests went unanswered and that his efforts to proceed were rejected. (DE 11 at 2; DE 12 at 3–4; DE 15 at 2.) The Court treats those assertions as allegations concerning exhaustion and availability, not as a verified showing that Plaintiff completed every level of administrative review.

The Prison Litigation Reform Act ("PLRA") requires exhaustion of "such administrative remedies as are available." 42 U.S.C. § 1997e(a). However, exhaustion is an affirmative defense; an inmate need not plead and prove it in the complaint. *See Jones v. Bock*, 549 U.S. 199, 216 (2007).

Sua sponte dismissal for nonexhaustion is ordinarily improper unless the defect is apparent from the face of the complaint. *See Custis v. Davis*, 851 F.3d 358, 361–63 (4th Cir. 2017). *Custis* recognizes that an allegation concerning an unsuccessful attempt to exhaust may mean that the inmate tried but could not exhaust the remedies available. *See id.* at 362.

Under *Ross v. Blake*, 578 U.S. 632, 642–44 (2016), the PLRA requires exhaustion only of remedies actually available to the inmate.

The Fourth Circuit has similarly recognized that an administrative remedy is unavailable when a prisoner, through no fault of his own, is prevented from using it. *See Moore v. Bennette*, 517 F.3d 717, 725–26 (4th Cir. 2008). Conversely, an inmate does not establish exhaustion merely by failing to follow administrative procedures that remain available. *See id.* at 725.

BOP regulations generally permit an unanswered request to be treated as denied after the applicable response period and advanced to the next level. 28 C.F.R. § 542.18.

The Report relied on the Complaint's indication that Plaintiff filed a BP-9 but did not complete an appeal. (DE 8 at 15–16; DE 1 at 8.) That account must be considered alongside Plaintiff's original explanation that he attempted to appeal but that the grievance process was delayed and his submissions disregarded. (DE 1 at 8.) His subsequent objections provide additional assertions of nonresponse and obstruction. (DE 11 at 2; DE 12 at 3–4; DE 15 at 2.)

The Court does not infer that the failure to receive a grievance response automatically rendered the process unavailable. Section 542.18 provides a mechanism for proceeding following a nonresponse. Nevertheless, Plaintiff alleges more than silence alone, and the present screening record does not establish the dates, submissions, rejection reasons, or administrative procedures actually available to him sufficiently to resolve the affirmative defense against him.

The Court, therefore, cannot conclude, at the screening stage, that failure to exhaust available remedies is apparent and undisputed from the face of the Complaint. *See Custis*, 851 F.3d at 361–63; *Jones*, 549 U.S. at 216; *Moore*, 517 F.3d at 725–26.

Accordingly, the Court **DECLINES TO ADOPT** the Report's recommendation of dismissal for no exhaustion. The Court neither finds that Plaintiff exhausted his administrative remedies nor determines that those remedies were unavailable. This determination leaves untouched the independent grounds for dismissal of Plaintiff's pleaded *Bivens* damages claims.

The portion of Plaintiff's objections challenging dismissal for failure to exhaust is **SUSTAINED** only to this limited extent. (DE 11 at 2; DE 12 at 3–4; DE 15 at 2.) The Court expresses no view on the merits of any exhaustion defense that might be supported by other evidence in a different procedural posture.

**5. Leave to Amend**

Plaintiff's fourth objection requests leave to clarify the incident dates, each Defendant's role, and the resulting injuries. (DE 11 at 2; DE 15 at 2.) The Court has considered that request separately from the exhaustion question. Leave to amend should ordinarily be permitted when a pleading deficiency may be cured, particularly for a pro se litigant. However, the Court need not allow amendment where it would be futile. *See Ostrzenski v. Seigel*, 177 F.3d 245, 252–53 (4th Cir. 1999).

Plaintiff has not tendered a proposed amended complaint or identified a distinct legal theory. Instead, he proposes to provide additional factual details

concerning the same incident and the same constitutional damages claim. (DE 11 at 2; DE 15 at 2.)

Additional allegations about the officers' observations, medical knowledge, or subjective appreciation of risk might address some of the pleading deficiencies discussed in Section C.2. The Court does not discount that possibility, particularly because actual knowledge may be inferred from circumstantial evidence. *See Edwards*, 2026 WL 2661096, at *15.

Nevertheless, the Court has independently concluded that the particular claim Plaintiff seeks to pursue arises in a new *Bivens* context and that special factors counsel against recognition of an implied damages remedy. Plaintiff's proposed amendments would further describe the same alleged emergency-medication response by correctional personnel. They would not alter the basic nature of the claim or the institutional considerations underlying the Court's new-context determination.

Accordingly, leave to amend the pleaded *Bivens* damages claims in this action would be futile. This conclusion concerns the amendments Plaintiff actually proposes. The Court does not conclude that no conceivable materially different constitutional or statutory claim could ever be cognizable.

The Court has also considered whether a distinct statutory cause of action or request for prospective relief is presently pleaded. The Complaint names the United States and recounts allegedly improper medical treatment, but identifies *Bivens* and the Eighth Amendment as the asserted cause of action. (DE 1 at 1–4; DE 1-1 at 1, 5–6.) No clearly stated Federal Tort Claims Act ("FTCA") claim appears in the operative Complaint, nor does the present record establish administrative presentment of a tort

claim to the appropriate federal agency under 28 U.S.C. § 2675(a). BOP prison grievances, without more, do not establish such presentment. The Court does not rule on an unasserted FTCA claim or its procedural requirements.

Plaintiff also seeks declaratory relief and damages concerning the past incident and expresses fear about future seizures. However, the Complaint does not identify a particular continuing unconstitutional policy or threatened action supporting a distinct prospective claim. (DE 1-1 at 5–6.) The Court does not infer a separately pleaded equitable cause of action solely from the relief requested. Liberal construction does not require the Court to create a statutory claim that Plaintiff has not asserted. The Court does not adjudicate the merits, timeliness, or administrative-exhaustion requirements of any distinct statutory cause of action not pleaded here.

For these reasons, the proposed amendment would not cure the dispositive absence of an available *Bivens* remedy for the claims presented. *See Spivey*, 173 F.4th at 179–81. The Court, therefore, finds amendment futile as to the claims actually asserted and the additional factual details Plaintiff proposes in his objections. Plaintiff's request for leave to amend is **DENIED**. (DE 11 at 2; DE 15 at 2.)

**D. Conclusion**

For the foregoing reasons, the Court **ADOPTS IN PART, MODIFIES IN PART, AND DECLINES TO ADOPT IN PART** the Report and Recommendation (DE 8).

First, the Court **ADOPTS** the recommendation to deny Plaintiff's IFP Motion (DE 2) and **OVERRULES** the objection addressing eligibility. (DE 12 at 1–2.) The

Court makes no separate determination that dismissal is warranted under 28 U.S.C. § 1915(e)(2)(A).

Second, the Court **ADOPTS** the recommendation to dismiss the constitutional damages claims but **MODIFIES** the analysis to address the allegations individually, recognize that actual knowledge may be established through circumstantial evidence, and apply *Spivey v. Breckon*, 173 F.4th 174, 179–81 (4th Cir. 2026), to the particular comparison with *Carlson*. Plaintiff's objections on those issues are **OVERRULED**. (DE 11 at 1–2; DE 12 at 2; DE 15 at 1–2.)

Third, the Court **DECLINES TO ADOPT** the Report's alternative exhaustion rationale and **SUSTAINS** Plaintiff's exhaustion objection only insofar as a sua sponte finding of non-exhaustion is not warranted on the present record. (DE 11 at 2; DE 12 at 3–4; DE 15 at 2.) The Court makes no finding that Plaintiff exhausted his remedies or that those remedies were unavailable.

Fourth, the Court **ADOPTS** the recommendation that leave to amend the pleaded *Bivens* damages claims be denied as futile. Plaintiff's amendment objection is **OVERRULED**. (DE 11 at 2; DE 15 at 2.)

The remaining objections are resolved consistently with the reasoning above. None requires service of the existing Complaint.

Accordingly, Plaintiff's Complaint (DE 1) is **DISMISSED WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND IN THIS ACTION** pursuant to 28 U.S.C. § 1915A(b)(1), without issuance or service of process. The denial of IFP status and the rejection of the exhaustion rationale are not independent grounds for this dismissal.

The Court does not adjudicate any separate statutory cause of action not pleaded in the Complaint and expresses no opinion concerning the availability of relief in a different, properly instituted action.

The Clerk of Court is **DIRECTED** to enter a separate judgment pursuant to Federal Rule of Civil Procedure 58, close this case, and mail a copy of this Order and the judgment to Plaintiff at his address of record.

**IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Florence, South Carolina
October 27, 2026

**NOTICE OF RIGHT TO APPEAL**

Plaintiff is hereby notified of the right to appeal this Order and the accompanying judgment. A notice of appeal must be filed with the Clerk of Court within sixty (60) days after entry of judgment. See Fed. R. App. P. 3, 4(a)(1)(A), 4(c).